UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN NATANAEL H.-G.,[1]<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | No. 1:26-cv-08842-TLN-CKD<br>A# 220-378-178<br><br>**RELEASE ORDER** |

This matter is before the Court on Petitioner Kevin Natanael H.-G.'s ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"). (ECF No. 1.) Respondents filed an opposition. (ECF No. 7.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual Background

This matter arises out of Petitioner's constitutional challenge to his civil immigration detention. (ECF No. 1.) Petitioner is a noncitizen who entered the United States without admission in August 2021. (*Id.* at 2; ECF No. 7 at 1.) Thereafter, U.S. Border Patrol detained Petitioner, initiated removal proceedings against him, and then released him from detention by an order of recognizance. (ECF No. 7 at 1, 6, 12, 15.) Petitioner has lived in the United States for more than five years and has a child who is a U.S. citizen. (ECF No. 1 at 18; ECF No. 2-1 at 7; ECF No. 7 at 25.) Petitioner fears persecution or torture based on his race, religion, political opinion, and membership in a particular social group if he is returned to his country of citizenship. (ECF No. 1 at 19; ECF No. 2-1 at 12; ECF No. 7 at 25.) Petitioner has also filed an asylum application, which is pending. (ECF No. 1 at 13; ECF No. 7 at 25.) Petitioner informed immigration agents that he was an inactive member of a gang. (ECF No. 7 at 1, 25.) Aside from an arrest for driving under the influence of alcohol ("DUI") that precipitated his current detention, Petitioner has no criminal history. (*Id.* at 1, 24–25.)

On October 24, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner as he was being released from a local jail, where he had been in custody for the DUI charge. (ECF No. 1 at 13; ECF No. 7 at 24.) ICE did not provide Petitioner a custody determination form.[2] (*See* ECF No. 7.) Additionally, ICE did not provide any notice or a hearing

---

[2] On October 27, 2026, the Court ordered Respondents to provide "any custody determinations, warrants, or notices" with their response to the Petition. (ECF No. 5.) Respondents did not provide any record of a custody determination. (*See* ECF No. 7.) Nor do they argue such process was provided. (*Id.*) Although counsel indicated the documents provided with Respondents' opposition may be incomplete and stated "any other relevant documents . . . will be expeditiously filed" once received, Respondents have filed no additional documents. (*Id.* at 2 n.1.) Therefore, the Court reasonably infers Petitioners was detained without a custody determination.

Petitioner contends ICE did not produce an arrest warrant when detaining Petitioner, whereas Respondents assert ICE did provide a warrant. (ECF No. 1 at 13; ECF No. 7 at 1–2.) Respondents failed to provide documentation of an arrest warrant. (*See* ECF No. 7.) However, the I-213 states ICE provided Petitioner a warrant at the time of his arrest, and, as noted above, Respondents indicated the exhibits to their opposition may be incomplete. (*Id.* at 2 n.1, 24.) Because, as analyzed below, the Court finds Respondents violated Petitioner's due process rights based on other facts, the Court need not determine whether Respondents had a valid warrant.

at the time it detained Petitioner. (ECF No. 1 at 12.) Petitioner is detained at California City Detention Center in this District. (*Id.* at 2, 4.)

Petitioner filed the Petition on October 27, 2026. (*Id.*) Petitioner challenges the lawfulness of his civil detention and seeks immediate release. (*Id.* at 2.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause, the Administrative Procedure Act, and the Immigration and Nationality Act. (ECF No. 1 at 19–22.) Respondents detain Petitioner under 8 U.S.C. § 1226(a). (ECF No. 7 at 1.) Respondents concede "Petitioner is entitled to receive a custody re-determination hearing," but no such hearing has been provided or scheduled. (ECF No. 1 at 2; ECF No. 7 at 3.)

The Court finds Petitioner's due process required a pre-deprivation hearing and compliance with 8 U.S.C. § 1226(a) procedures, including an initial custody determination. Because the government has failed to provide Petitioner the process he was due, the government violated Petitioner's constitutional rights.[3]

---

[3] Because the Court finds Respondents violated Petitioner's Fifth Amendment rights, the Court declines to address the parties' arguments concerning Petitioner's claims under the

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps. First, a court asks whether there exists a protected liberty interest under the Due Process Clause. Second, the court examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A. Liberty Interest

At the first step, the Court finds Petitioner has a protected liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025). A person's liberty interest may increase over time. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest here. He has resided in the United States for more than five years, and he provides for his wife and two children, one of whom is a U.S. citizen. (ECF No. 1 at 18–19; ECF No. 2-1 at 7; ECF No. 7 at 25.) Additionally, immigration authorities released Petitioner into the United States on his own recognizance in 2021. (ECF No. 7 at 15.) "[T]he government's decision to release an individual from custody creates 'an implicit promise,'

---

Administrative Procedure Act and Immigration and Nationality Act. (ECF No. 1 at 20–22; ECF No. 7 at 4.)

upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). Even if he is removable, or his liberty is revocable, due process still protects his liberty. *See Hernandez*, 872 F.3d at 992; *Zadvydas*, 533 U.S. at 693. Having found a liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

B. Procedures Required

At the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions in detaining him. The time Petitioner spent at liberty in the United States underscores the gravity of its loss. *See Doe*, 787 F. Supp. 3d at 1094 ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Despite his interest in maintaining his liberty, Petitioner is detained, separated from his community and family, and unable to work to provide for his wife and two minor children, leading to "devastating" hardship. (ECF No. 1 at 19; ECF No. 2-1 at 8.) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any opportunity to be heard concerning the justification for his detention, Respondents have not articulated a legitimate interest in detaining Petitioner, and Respondents failed to comply with the procedural protections required by 8 U.S.C. § 1226(a). Because civil immigration detention is

"nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by . . . bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, in 2021, immigration authorities necessarily found Petitioner was not a danger or a flight risk when they released him from detention on his own recognizance. *See* 8 C.F.R. § 1236.1(c)(8). There is no alternate finding or change in circumstances in the record to override that finding. (*See* ECF No. 7.) Although Respondents state Petitioner told officers that he was an inactive member of a gang, Respondents do not argue Petitioner's inactive gang membership makes him a danger. (*See id.*) Indeed, for more than five years, Petitioner lived in the community without acquiring any criminal convictions and has incurred only one criminal charge, a DUI. (*Id.* at 25.) Similarly, Respondents do not rebut Petitioner's assertion that he consistently attended his check-ins with ICE prior to his detention. (ECF No. 1 at 19; ECF No. 2-1 at 7; *see* ECF No. 7.) Without any showing by Respondents of a legitimate interest in detaining Petitioner or such a finding by a neutral arbiter, the Court finds there is a serious likelihood Petitioner was erroneously deprived of his liberty interest.

Moreover, Respondents failed to provide the procedural safeguards owed to Petitioner under 8 U.S.C. § 1226(a) and its implementing regulations. "ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954) (reversing dismissal of habeas petition where Board of Immigration Appeals failed to follow its own regulations). Here, despite this Court's Order requiring Respondents to produce custody determinations (ECF No. 5), Respondents did not produce a custody determination, nor is there any mention of a custody determination in Petitioner's Form I-213 (*see* ECF No. 7). It thus appears on the record that

Respondents have not provided any initial custody determination as required by statute.[4] *See Zurita Navarro* v. *Warden Cent. Valley Annex Det. Facility*, No. 1:26-CV-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026) (enumerating procedural violations of § 1226(a), including "failure to provide the petitioner with an initial custody determination either prior to or contemporaneously with detention," and collecting cases). Finally, Respondents concede Petitioner is entitled to a custody hearing under § 1226(a), but Respondents have not provided one. (ECF No. 7 at 3.) Thus, Petitioner has been deprived of the procedural safeguards to which he is entitled.[5] Without any procedural safeguards to determine whether his detention is justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025).

Finally, the government's interest in detaining Petitioner without a hearing is negligible, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Custody hearings are routine for the government. Indeed, a hearing is part of the very process owed to Petitioner under 8 U.S.C. § 1226(a). If detention is justified, any delay in detention due to the time required to provide notice and a hearing would have been minimal. Any burden associated with providing this process is insignificant and does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation. Nor do Respondents claim the government would be unduly burdened by providing a custody hearing. (*See* ECF No. 7.)

Under the *Mathews* factors, the Court finds the government was required to provide

---

[4] In the absence of a I-286 custody determination form, the Court finds suspect Respondent's implication that Petitioner knew of and could exercise his right to request a bond hearing before he filed the instant Petition. (ECF No. 7 at 3 (arguing "it is the detainee who must request the bond hearing" and construing the Petition as Petitioner's request for a hearing).) Because the I-286 form provides a person being detained the option to request a bond hearing before an immigration judge, Respondents' failure to provide Petitioner a custody determination at minimum made it more challenging for Petitioner to request a hearing in writing.

[5] Respondents argue "[t]here is nothing unique . . . about this case that would make [§] 1226(a)'s procedures constitutionally deficient as applied to Petitioner." (ECF No. 7 at 3.) Respondents misapprehend Petitioner's constitutional claims. The constitutional deficiency here lies in Respondents' failure to follow § 1226's procedures, not in the procedures themselves.

Petitioner with pre-deprivation notice and a custody hearing to determine whether his detention was justified. 424 U.S. 319, 335 (1976); *see Julio Fernando R.P. v. Andrews*, No. 1:26-CV-05547-TLN-CSK, 2026 WL 2137758, at *2–*3 (E.D. Cal. July 24, 2026) (analyzing the *Mathews* factors and finding similarly). The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Respondents did not provide Petitioner with pre-deprivation process, and Respondents have not identified any reason Petitioner presents a "special case" and in any event did not provide Petitioner the statutorily required procedures during arrest and detention. Petitioner has thus been deprived of an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Therefore, Petitioner is detained in violation of the Fifth Amendment.

The appropriate relief in this case is immediate release. "[T]he traditional function of the writ [of habeas corpus] is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. While Respondents argue a bond hearing in lieu of the traditional remedy of release "is particularly appropriate" given Petitioner's DUI charge, they offer no on-point authority to substantiate that assertion. (ECF No. 7 at 3.) One of Respondents' proffered cases concerns the detention of a noncitizen pursuant to a different statute — 8 U.S.C. § 1231(a)(6) — who had been charged and convicted of sodomy and previously found to be a danger to the community, *Mansoor v. Figueroa*, No. 3:17-cv-01695-GPC (NLS), 2018 WL 840253, at *1–*2, *4 (S.D. Cal. Feb. 13, 2018), and the other ordered without explanation that the petitioner be provided a bond hearing, *Arshakyam v. Warden of California City Detention*, No. 1:25-cv-01780-DAD-AC (HC), 2026 WL 143143, at *5 (E.D. Cal. Jan. 20, 2026). Based on the violations of Petitioner's due process rights, the appropriate remedy in this case is not to bring the government into conformity with its governing statutes; it is to release Petitioner from unlawful custody. *See Dinesh S. v. Chestnut*, No. 1:26-cv-01717-TLN-EFB, 2026 WL 1028016, at *3 (E.D. Cal. Apr. 16, 2026) (citations omitted). Accordingly, the Court finds Petitioner's immediate release appropriately

remedies his injury.

## IV. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED. Further, IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Kevin Natanael H.-G. (A# 220-378-178) from custody on an order of release on recognizance. At the time of release, Respondents must return all of Petitioner's documents and possessions. Respondents must file a **notice of compliance** with this Order **within 2 court days of the date of this Order**.

2. Respondents are ENJOINED from re-arresting or re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government demonstrates by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present. Should Petitioner become subject to a final and executable order of removal, the government shall provide Petitioner a minimum of seven days' notice (counting from the date the removal order becomes final and executable) of any intent to execute the order and detain Petitioner.

3. Petitioner's Ex Parte Application for Temporary Restraining Order and Order to Show Cause (ECF No. 2) is DENIED as moot.

4. The Clerk of Court is directed to serve this Order on **California City Detention Center**, enter judgment in favor of Petitioner, and close this case.

IT IS SO ORDERED.

DATED: November 3, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE